**The EMPLOYERS' FIRE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**PIONEER UNDERWRITERS, INC., Defendant.**

**No. 1316.**

United States District Court
N. D. Florida,
Tallahassee Division.

July 18, 1968.

H. Franklin Perritt, Jr., of Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for plaintiff.

Donald O. Hartwell of Hall, Hartwell, Hall & Canada, Tallahassee, Fla., for defendant.

## MEMORANDUM DECISION

CARSWELL, Chief Judge.

This cause is before the Court on Motions for Summary Judgment filed by both the plaintiff and defendant. The following uncontradicted facts are established by the record.

On January 1, 1963, the plaintiff, THE EMPLOYERS' FIRE INSURANCE COMPANY, and the defendant, PIONEER UNDERWRITERS, INC., entered into an agent's agreement whereby EMPLOYERS appointed PIONEER its general agent for the State of Florida au-

thorizing PIONEER to issue policies of insurance, as authorized by EMPLOYERS, and to have general supervision of the underwriting of such business. That agreement provided that EMPLOYERS retained the right to reject any risk and to direct the cancellation of any risk. Further, the agreement provided that PIONEER would submit all claims for adjustment to the Jacksonville, Florida claim office of EMPLOYERS in accordance with the specific instructions for claim handling issued by EMPLOYERS' claim department. On July 1, 1963, at the request of Steve Wetzler, an insurance broker, PIONEER issued an EMPLOYERS' policy of automobile liability insurance with coverage of 10/20 and effective dates from July 1, 1963 to July 1, 1964, to one Ira L. Carter. Carter paid the broker a portion of the premium. Thereafter, Carter, failing to pay the balance of the premium to the broker, Wetzler, the broker directed PIONEER to cancel the policy for non-payment of premium. In accordance with this request, one of PIONEER'S clerks prepared a notice of cancellation on November 6, 1963, and executed an affidavit of mailing on such date advising the insured, Carter, that his policy was cancelled effective November 18, 1963. Such notice of cancellation was actually mailed on November 8, 1963. On December 15, 1963, Carter was involved in an accident which ultimately gave rise to claims by one Stull and Herring.

After this accident and prior to the institution of any lawsuit, the accident was called to the attention of EMPLOYERS and EMPLOYERS' claim department was notified and a request was made by Carter that EMPLOYERS extend coverage to him and undertake investigation of the accident and the defense of any lawsuit which might be instituted. EMPLOYERS declined to afford coverage relying on the notice of cancellation and asserting that the policy of insurance had been validly cancelled.

Thereafter, suits were instituted and ultimately resulted in judgments against Carter for a total amount of $45,000.00.

On July 22, 1965, Carter instituted suit against EMPLOYERS for declaratory judgment and other relief seeking a declaration that EMPLOYERS was obligated to satisfy in full the judgments obtained against him. The suit by Carter was predicated upon several grounds, none of which, however, asserted any defect with respect to the date of mailing of the notice of cancellation or the date upon which the notice of cancellation was to become effective.

The suit by Carter against EMPLOYERS proceeded through a number of hearings, depositions and other procedures until March 15, 1966, when, for the first time, the trial judge on his own initiative raised a question as to the effectiveness of the notice of cancellation. Until this time, no one had questioned the validity of the notice of cancellation and it had been assumed that the requisite ten day notice provided for by the policy and the law of the State of Florida had been adequately met when the notice of cancellation was mailed on November 8, 1963, to be effective on November 18, 1963. The suit by Carter against EMPLOYERS resulted in a final judgment on April 26, 1966 in favor of Carter against EMPLOYERS.

EMPLOYERS satisfied the judgments against Carter and obtained releases from all persons concerned.

EMPLOYERS then instituted this action against PIONEER by filing its Complaint in two counts. The first count alleged that PIONEER was indebted to it for the sums which it had been required to pay as a result of the Carter accident for the reason that the late mailing of the notice of cancellation was not disclosed by PIONEER to EMPLOYERS, but was carelessly and negligently concealed. And, that based on the information available to it, EMPLOYERS denied legal liability to defend the claims against Carter. The second count alleged breach of contract for the failure of PIONEER to perform its duties under the agent's agreement to the best of its knowledge, skill and judgment.

PIONEER filed a number of defenses, including defenses to the effect that all of the facts and circumstances surrounding the cancellation of the policy including the issuance and mailing of the notice of cancellation were known to EMPLOYERS shortly after the occurrence of the accident involving Carter and that the decision not to defend Carter was the independent judgment and decision of EMPLOYERS. Further, PIONEER asserted that on June 3, 1965, EMPLOYERS had released PIONEER from all claims arising out of the transaction of EMPLOYERS' business by PIONEER.

The depositions of all persons having relevant knowledge were taken and the parties stipulated to the introduction of all relevant and material documents bearing on the issue before the Court.

Though PIONEER had requested trial by jury in its Answer, it orally agreed before the Court to withdraw such request and to permit this cause to proceed to trial before the Court without a jury. EMPLOYERS, however, refused to accede to this mode of disposition. However, it was stipulated by the parties that all relevant and material facts were before the Court and that in the event of trial, neither party would be in a position to introduce new or additional testimony or facts. It thus appears that the Court had available to it all of the facts which either party desired to present and that the only difference between a disposition on motion for summary judgment and a trial before the Court, either with or without a jury, would be that the Court could have heard the testimony of the deposition witnesses in person.

The Court proceeded to consider this cause on the motions for summary judgment filed herein by each of the parties, and concludes that the motion for summary judgment filed by EMPLOYERS should be denied and that the motion for summary judgment filed by PIONEER should be granted, for the reason that there is no genuine issue of any material fact which would render PIONEER liable to EMPLOYERS. It appears to the Court and the Court finds, that there is no conflict or issue as to the facts nor are there any inferences to be drawn from such facts which are in dispute.

While EMPLOYERS asserts that PIONEER carelessly and negligently concealed the facts surrounding the typing and mailing of the notice of cancellation and that EMPLOYERS acted upon erroneous information to its detriment, the Court finds that the uncontradicted evidence in the record establishes that EMPLOYERS, shortly after the Carter accident, and long before any claims were asserted, was fully informed of the facts. The Court further finds, on the uncontradicted evidence, that there was no reliance by EMPLOYERS, but that to the contrary, the decision to assert cancellation of the policy and to rely on the notice of cancellation was arrived at by EMPLOYERS independently and with full knowledge of all relevant and material facts. It is conceded, of course, by PIONEER that the notice of cancellation was not mailed on November 6, 1963, but was in fact mailed on November 8, 1963. It is further uncontradicted that the issue concerning date of mailing and the date the notice of cancellation was to become effective was not injected into the Carter vs. EMPLOYERS' case until some ten months after its institution and then by the trial judge. It is also conceded that the settled law of Florida was at all times contrary to the position being asserted by EMPLOYERS in the Carter case.

This record conclusively and without contradiction, establishes full knowledge of all the facts surrounding the dating, typing and mailing of the notice of cancellation by EMPLOYERS. W. N. Tilton, adjuster for EMPLOYERS, states in his investigation report of February 12, 1964, that the notice of cancellation was dated November 6, 1963, but that the certificate of mailing stamped by the post office department indicated that the notice was mailed on November 8, 1963. Further, this report asserts that such cancellation was proper and that therefore the policy of Carter was cancelled and was not in effect at the time of the

accident. In his report of March 12, 1964, the adjuster, W. N. Tilton, restates the same facts and conclusions. In his report of May 3, 1964, Mr. Tilton again called attention to the actual date of mailing of the notice of cancellation. The regional claims superintendent for EMPLOYERS, Mr. J. P. Kohnke, in his letter of December 11, 1964, to the attorneys representing EMPLOYERS noted that EMPLOYERS was maintaining the position that the policy did not cover the accident in which the insured was involved. EMPLOYERS own file discloses, without contradiction, that EMPLOYERS continuously maintained that the action taken by PIONEER was proper and that EMPLOYERS relied on such action. It was not until after April 26, 1966, that EMPLOYERS voiced any objection or criticism to PIONEER of its handling. It is thus established, without contradiction, that all of the true facts surrounding the preparation and mailing of the notice of cancellation by PIONEER were fully known to EMPLOYERS. The record also fully established, without contradiction, that EMPLOYERS had the ultimate authority with respect to the writing of policies, the cancellation of policies, and the reinstatement of policies. The ultimate decision to deny coverage and to rely on the notice of cancellation was reached by EMPLOYERS in its independent judgment without reliance upon or assistance or advice from PIONEER. The record also reflects, without contradiction, that until April 26, 1966, EMPLOYERS, at all times ratified, adopted and confirmed the action of PIONEER and maintained and asserted that PIONEER had acted properly in the performance of its duties.

It is established, without contradiction, that there was no concealment as asserted by EMPLOYERS nor was there any reliance by EMPLOYERS on PIONEER in making any decision in the Carter case. The Court, therefore, concludes that there is no genuine issue as to any material fact nor are there any conflicting inferences which could arise from the facts which would entitle EMPLOYERS to recover from PIONEER. In addition, there exists another impediment to any recovery by EMPLOYERS against PIONEER.

■ On June 3, 1965, EMPLOYERS and PIONEER entered into a final settlement agreement, for a good and valuable consideration, which released PIONEER from all claims arising out of the transaction of EMPLOYERS' business by PIONEER. In return, for all of the assets, including accounts receivable as well as real and personal property, EMPLOYERS did remise and release any and all right or claim arising out of the transaction of its business by PIONEER from the beginning of the world. This agreement was founded upon good and valuable consideration. No ambiguity exists with respect to the terms and conditions or the language of such agreement which would require any interpretation. Further, the record reflects that as late as April 28, 1966, Mr. Richard F. O'Connell, Assistant Superintendent of the Accounts Department of EMPLOYERS, by letter, advised the secretary of PIONEER that no further release was needed from EMPLOYERS in order to terminate all of the obligations of PIONEER to it and further stated that EMPLOYERS was willing to specify that PIONEER had satisfactorily fulfilled the obligations set forth in the agreement. The vice-president of EMPLOYERS, Mr. John W. Cookson, and the superintendent of the accounting department of EMPLOYERS, Mr. Richard F. O'Connell, both testified by deposition that PIONEER had carried out in full its obligations under the agreement of June 3, 1965. This agreement is an absolute release of PIONEER from the claims sought to be asserted by EMPLOYERS.

Settle order in accordance herewith is entered this date.